JOHNSON, Natasha, on behalf of herself and her minor children and all other similarly situated persons, Appellant in 86–1149,

v.

COHEN, Walter, Individually and in his official capacity as Secretary of the Pennsylvania Department of Public Welfare, Stovall, Don Jose, Individually and in his official capacity as Executive Director of the Philadelphia County Board of Assistance, Appellants in 86–1107,

Heckler, Margaret M., Individually and in her official capacity as Secretary of the United States Department of Health and Human Services.

Appeal of Margaret M. HECKLER, Secretary of the United States Department of Health and Human Services, Appellant in 86–1101.

Nos. 86–1101, 86–1107 and 86–1149.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
Rule 12(6)(a)
Sept. 28, 1987.

Decided Dec. 31, 1987.

William Kanter, Carlene V. McIntyre, U.S. Dept. of Justice, Civil Div., Appellate Staff, Washington, D.C., for Federal appellant/cross-appellee.

John O.J. Shellenberger, Deputy Atty. Gen., Philadelphia, Pa., for State appellants/cross-appellees.

Deborah Harris, Community Legal Services, Inc., Amy E. Hirsch, Community Legal Services, Inc., Philadelphia, Pa., for appellees/cross-appellants.

Before GIBBONS, Chief Judge, and HIGGINBOTHAM, Circuit Judge, and COWEN, District Judge.*

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

The initial issue presented for review on this appeal concerned the constitutionality of Title IV–A of the Social Security Act, 42 U.S.C. §§ 601–615 (1982 & Supp.1987) ("AFDC"), as amended by § 2640(a) of the Deficit Reduction Act of 1984, P.L. 98–369, 98 Stat. 494, 1145 ("DEFRA"). More specifically, the question raised was whether the district court correctly held that §§ 602(a)(38) and 602(a)(26) of the AFDC, which had been applied by appellants to require the assignment of child support payments received by each dependent child to the Pennsylvania Department of Public Welfare ("DPW") as a condition precedent to the receipt of AFDC benefits by the family, required a prior hearing in each case to determine whether the support payments were being used for the exclusive benefit of the child, and thus not properly considered "family" income.

■ Subsequent to the filing of this appeal, the substantive issue that it raises was dispositively resolved by the United States Supreme Court in *Bowen v. Gilli-*

ard, — U.S. —, 107 S.Ct. 3008, 97 L.Ed. 2d 485 (1987), discussed below at III. What remains for our consideration before we may properly conclude this appeal, however, is the challenge to our jurisdiction raised by the appellees/cross-appellants. They assert that exclusive jurisdiction over appellants' claim rested with the Supreme Court pursuant to 28 U.S.C. § 1252 (1982), and therefore that this appeal should be dismissed.[1] After consideration of this contention, we conclude that our jurisdiction over this appeal is proper pursuant to 28 U.S.C. § 1291 (1982), and therefore we will adjudicate this appeal on its merits. In accordance with *Bowen v. Gilliard,* we will reverse the district court's decision to the extent that it precludes enforcement of the statute, and vacate the injunction that the district court ordered. Also, in light of *Bowen v. Gilliard,* we will reject the contentions raised on the cross-appeal and affirm that part of the district court's decision that upheld the constitutionality of the statute.

### I.

The AFDC benefits program was designed by Congress to be implemented under a collaborative state and federal effort. Federal funds are made available to states that satisfactorily devise plans that fulfill the requirements of Title IV–A. *See* 42 U.S.C. § 602(b). AFDC benefits are implemented by each state in accordance with the state's regulations, and regulations promulgated by the Secretary of Health and Human Services ("the Secretary").

In 1984 Congress amended the AFDC, consistent with overall budget reductions, by its enactment of DEFRA, and thereby effected broad changes to the administration of social welfare benefits. One section

---

* Honorable Robert E. Cowen, United States District Judge for the District of New Jersey, sitting by designation. Since the submission of this appeal, Judge Cowen has become a member of this Court.

1. The appellees argue correctly that if this Court reaches the conclusion that it is without jurisdiction, the appellants are time barred from

reasserting their claims to the Supreme Court. This result would follow even though the preclusion of this appeal would have the effect of permitting a district court's decision that is incompatible with a decision of the Supreme Court, to remain intact. *See Donovan v. Richland County Ass'n For Retarded Citizens,* 454 U.S. 389, 102 S.Ct. 713, 70 L.Ed.2d 570 (1982).

of that act, of particular importance to this appeal, provided that

> as a condition of eligibility for aid, each applicant or recipient will be required— (A) to assign the State any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time such assignment is executed ...

42 U.S.C. § 602(a)(26). The statute further provided that

> in making the determination [of eligibility] under [this statute] with respect to a dependent child ... the State agency shall ... include—
> (A) any parent of such child, and
> (B) any brother or sister of such child, ... if such parent, brother or sister is living in the same home as the dependent child,
> and any income of or available for such parent, brother, or sister shall be included in making such determination and applying such paragraph with respect to the family ...

42 U.S.C. § 602(a)(38). To implement these provisions the Secretary published interim final regulations in 1984. *See* 45 C.F.R. § 206.10(a) (1986). Those regulations sought to enact what the Secretary interpreted to be the congressional mandate. They provide that

> [f]or AFDC only, in order for the family to be eligible, an application with respect

to a dependent child must also include, if living in the same household and otherwise eligible for assistance: (A) [a]ny natural or adoptive parent, or stepparent ... and (B) [a]ny blood-related or adoptive brother or sister.

45 C.F.R. § 206.10(a)(1)(vii).[2] Prior to the DEFRA amendments and the implementing regulations, the amount of an AFDC family's benefit was calculated exclusive of income that the parent or caretaker received as child support for non-AFDC children. Pursuant to the amendments, any income that a dependent child receives, including child support that by itself sufficiently supports the child for whom it is intended, is deemed "family" income and must be included in the income figure that is used to determine eligibility.[3] Each dependent child is considered as part of the family unit, and it is the size of that unit that is used in the calculation of benefits. Child support income that is not so large that it makes the family unit ineligible for AFDC benefits must be assigned or "deemed" to the DPW before the family can receive any benefits.[4]

The appellees/cross-appellants, members of a class of parents who receive AFDC benefits, ("parents"), sued to enjoin the enforcement of the statute. They argued that the defendants/appellants, Walter Cohen, the Secretary of the Pennsylvania Department of Public Welfare, and Don Jose Stovall, Executive Director of the Philadelphia County Board of Assistance ("state

---

**2.** In accordance with these regulations, the DPW construed its regulations to require that all AFDC eligible siblings be included in the assistance unit. *See* 55 Pa.Code § 171.21(b)(1) (1986) (Public Assistance Manual). This section was subsequently altered by temporary interim regulations that explicitly excluded child support recipients from the family unit for the purpose of AFDC eligibility in light of the district court's decision in this case. *See* 16 Pa.Bull. 4107 (1986) ("Proposed Rulemaking"), amending 55 Pa.Code § 171.21(b)(1)(i)(C)(V) (1986) (excluding form "family unit" those children who are recipients of court-ordered child support payments).

**3.** The act limited the inclusion of dependent children's income to that income not otherwise excluded by the AFDC or the DEFRA amendments. DEFRA, for example, specifically provides that the state agency, in its determination

of benefits for an AFDC family, "may" disregard income received by a dependent child that is derived from a program "carried out under the Job Training Partnership Act ...," 42 U.S.C. § 602(a)(8)(A)(v); and "shall" disregard the earned income of each dependent child who is a full-time college or vocational school student, (or who is a part-time student, but who is not also employed full-time), 42 U.S.C. § 602(a)(8)(A)(i).

**4.** Pursuant to 42 U.S.C. §§ 602(a)(8)(A)(vi) and 657(b)(1) the statute excludes the first $50.00 received as child support from the amount of payments that must be assigned to the DPW. It appears that this amount was set arbitrarily, and was not intended to offset fully, but only to mitigate to an extent, the inequities that resulted where the child's support payments were greater than the share he or she received as AFDC benefits.

appellants") and the Secretary had interpreted and applied the statute in a manner that failed to give proper consideration to the circumstances of the significant number of needy families that consist of single parents and children who are not whole-blood siblings. The parents asserted that in many of these families, although one of the dependent children received direct support from the estranged parent, his or her half-brothers and half-sisters were not similarly provided for. The income received by the supported child, they argued, could not appropriately be considered "family" income because it was intended solely for the benefit of one child. They maintained that Pennsylvania law required the caretaker in such circumstances to expend the child support payments exclusively on behalf of the supported child. *See* 55 Pa. Code § 183.24 (1986); Brief of Appellees/Cross–Appellants at viii (citing *Scott v. Commonwealth Department of Public Welfare*, 46 Pa.Commw. 403, 406 A.2d 594 (1979) (holding that court orders that specify support for particular child or children are legally restricted to use of named persons and are therefore disregarded in determining eligibility of the assistance unit)); *see also* Joint–Appendix ("J.App.") at 80 (district court's conclusions of law ¶ 27). The parents further argued that notwithstanding this legal obligation, in many instances the supported child's special needs required that the caretaker spend the payments exclusively for that child's benefit. *See* J.App. at 120–21; Brief of Appellees/Cross–Appellants at xii; *see also* J.App. at 53–54 (district court's conclusions of fact ¶¶ 42–45).

The parents contended that § 602(a)(38) did not authorize the assignment of child support to the DPW as a condition to the

unsupported siblings' eligibility for AFDC, because the AFDC statute expressly excludes "legally unavailable funds" from any benefits calculus. *See* Brief of Appellees/Cross–Appellants at 2. They cite *Heckler v. Turner,* 470 U.S. 184, 105 S.Ct. 1138, 84 L.Ed.2d 138 (1985), for the proposition that § 602(a)(7) "prohibits attribution of unavailable income to an applicant or recipient in the AFDC program," *see* Brief of Appellees/Cross–Appellants at 1–2,[5] and argue that pursuant to Pennsylvania law, the term "legally unavailable funds" includes child support payments. Therefore, the parents asserted, § 602(a)(38) could not be construed to require inclusion of these payments because there is no clear expression by Congress demonstrating its intent to condition federal benefits on the usurpation of Pennsylvania law. Finally, the parents argued that the appellants' interpretation of the statute served to stigmatize the supported child by requiring that he or she become an AFDC ward, and more significantly, that the deeming requirement constituted a taking without due process in contravention to the fifth and fourteenth amendments to the Constitution.

The parents brought suit in the United States District Court for the Eastern District of Pennsylvania, seeking to enjoin the appellants from any enforcement of the statute. After an evidentiary hearing, and prior to the Supreme Court's decision in *Bowen v. Gilliard,* the district court granted preliminary injunctive relief that prohibited the appellants' enforcement of the statute pending the amendment of the implementing regulations to provide a hearing in each case. The district court found that the regulatory scheme that had been devised to enforce the legislation violated the constitutional rights of the AFDC recip-

---

**5.** Section 602(a)(7) provides in pertinent part that

except as may be otherwise provided in paragraph (8) or (31) and section 615 of this title, ... [the] State agency—

(A) shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State de-

termines should be considered in determining the need of the child or relative claiming such aid....

42 U.S.C. § 602(a)(7).

It bears noting that the sections delineated by the statute provide for the exclusion of specifically enumerated kinds of income, and that child support income is not among those enumerations. *See generally* §§ 602(a)(8), (31) and 615(b).

ients and constituted a taking of the supported child's property without due process. *See* J.App. at 80. The district court therefore prohibited the state from "requiring a caretaker to apply for AFDC benefits on behalf of a child for whom court ordered child support is paid and to assign the child's support payments to DPW." *Id.* at 99. On January 10, 1986, the district court entered a final order requiring that a pre-deprivation hearing be held when implementing § 602(a)(38), *id.* at 98, and accordingly finally enjoined the State from

> "considering a child's court ordered support payments in determining the AFDC eligibility of the supported child's siblings and caretaker, unless the defendants or their successors have shown at the pre-deprivation hearing that the child support payments are not used solely for the child on whose behalf they are paid."

*Id.* at 99.

The state and federal appellants gave notice of appeal from that order in this Court pursuant to § 1291. The Secretary also gave notice of appeal in the Supreme Court pursuant to § 1252. The Secretary did not pursue the latter appeal, however, and appears to have concluded subsequent to the filing of notices, that jurisdiction is proper only in this Court.[6]

On their merits, these appeals raised the question of how Congress had intended to alter the determination of eligibility for AFDC benefits by its enactment of the DEFRA. The appellants argued that the Secretary had construed the statute consistently with congressional intent by requiring that child support income be considered in determining a family's eligibility for AFDC benefits, and that such payments should be deemed to the DPW. They further argued that the district court erred in its determination that the implementing regulations were unconstitutional for failing to provide for a hearing in each case prior to the deeming of payments.

■ The parents moved for dismissal of the appeal on the threshold question of this Court's jurisdiction. They asserted that the district court's decision had in fact found the *statute*, as amended, to be unconstitutional. Therefore, they maintained, the only place the appeal could have been properly raised was in the Supreme Court pursuant to § 1252. The parents also cross-appealed, and argued that to the extent that the district court's order permitted the appellants to require the assignment of child support payments as a condition to eligibility for AFDC, even after a pre-termination hearing, it was in error.[7]

---

6. The Secretary declined to file either a jurisdictional statement or briefs with the Supreme Court, and asserts in a memorandum to this Court that the district court found only the regulations to be constitutionally infirm, and therefore jurisdiction is exclusive to this Court. *See* Opposition To Motion To Dismiss For Lack Of Jurisdiction at 1. The state appellants have not similarly maintained that jurisdiction is clear and exclusive to this Court, but they have raised their appeal only to this Court. They argue that the district court's decision is ambiguous regarding its finding as to constitutionality of the statute. For that reason, they assert that jurisdiction in this Court is proper to conclude either that the district court has not held the statute unconstitutional (and therefore to dispose of this appeal under *Bowen v. Gilliard*), or to remand this matter to the district court for clarification regarding its holding, thereby enabling appellants to initiate appropriate appeals from a more precise order.

7. The parents maintain that notwithstanding their assertion of the exclusive jurisdiction of the Supreme Court over the principal appeal, and the express requirement of § 1252 that "[a]

party who has received notice of appeal under this section shall take any subsequent appeal or cross appeal to the Supreme Court," jurisdiction by this Court is proper over their cross-appeal. They argue that since the cross-appeal challenges only the remedy of the district court, and not its conclusion as to the constitutionality of the statute, jurisdiction by this Court over the cross-appeal is proper under § 1291. *See* Brief for Appellees/Cross–Appellants at iv. This assertion *appears contrary to established precedent.* In cases where § 1252 governs, the Supreme Court has determined that it acquires jurisdiction over the *entire* case. *See Heckler v. Edwards,* 465 U.S. 870, 104 S.Ct. 1532, 79 L.Ed. 2d 878 (1984); *see also Regan v. Taxation With Representation of Washington,* 461 U.S. 540, 543 n. 3, 103 S.Ct. 1997, 1999 n. 3, 76 L.Ed.2d 129 (1983); *National Railroad Passenger Corp. v. Atchison, Topeka & Santa Fe R.R. Co.,* 470 U.S. 451, 464 n. 21, 105 S.Ct. 1441, 1451 n. 21, 84 L.Ed.2d 432 (1985). These cases indicate that it does not matter that the issues raised on cross appeal are nonconstitutional in nature, jurisdiction is nonetheless exclusive to the Supreme Court. *Cf. United States v. Clark,* 445 U.S. 23,

The federal and state appellants oppose the dismissal motion on the grounds that the district court did not find the statute unconstitutional, and that such a finding was not essential to the relief that the district court ordered. The appellants maintain that the district court's order held only that the regulations implementing the statute were infirm. Therefore, they argue, appeal from the district court's final order to this Court is appropriate under § 1291, and that our decision is controlled by *Bowen v. Gilliard*. We agree. In our view the district court's decision does not have the effect of holding § 602(a)(38) unconstitutional. Accordingly, we find that our jurisdiction over this appeal is proper pursuant to § 1291.[8]

## II.

Section 1252 provides in pertinent part that

> [a]ny party may appeal to the Supreme Court from an interlocutory or final judgment, decree, or order of any court of the United States ... holding an Act of Congress unconstitutional in any civil action, suit, or proceeding to which the United States or any of its agencies, or any officer or employee thereof, as such an officer or employee is a party ...

28 U.S.C. § 1252. It was enacted to enable litigants in civil suits in which the United States or one of its agencies is a party, to have expedited review of decisions by courts of the United States in which federal statutes or other acts of Congress have been held unconstitutional. The statute applies whether the finding of unconstitutionality is explicit or implicit in the Court's ruling. Underlying the statute is Congress' intent to provide that an ultimate determination of the constitutionality of its acts be rendered as quickly as possible, and

thereby avoid having the government or its agencies delayed in effecting legitimate congressional mandates because of an incorrect conclusion by an intermediary court. Alternatively, with regard to those cases in which the challenged act is ultimately determined to be infirm by the Supreme Court, the statute was intended to provide Congress with an immediate opportunity to cure the constitutional defect. *See McLucas v. DeChamplain*, 421 U.S. 21, 95 S.Ct. 1365, 43 L.Ed.2d 699 (1975).

■ Jurisdiction under this statute is exclusive with the Supreme Court, *Donovan v. Richland County Ass'n for Retarded Citizens*, 454 U.S. 389, 102 S.Ct. 713, 70 L.Ed.2d 570 (1982). It represents an explicit departure from the Congressional policy to limit the mandatory docket of the Supreme Court. In light of that policy, however, the section has been narrowly interpreted. The provision grants review by the Supreme Court *only* in those cases in which a court has expressly found an "Act of Congress" to be unconstitutional, or where such a finding is necessary to the result that the court reaches. Cases in which the rule or regulation of an administrative agency is found by a United States court to be unconstitutional, do not provide jurisdiction to the Supreme Court under § 1252. *United States v. Christian Echoes National Ministry, Inc.*, 404 U.S. 561, 92 S.Ct. 663, 30 L.Ed.2d 716 (1972) ("Christian Echoes"); *Aguilar v. Felton*, 473 U.S. 402, 408 n. 7, 105 S.Ct. 3232, 3236 n. 7, 87 L.Ed.2d 290 (1985).

Our review of the district court's findings in the present case persuades us that it found only that the appellants' regulations implementing § 602(a)(38) were unconstitutional, and not that the section itself was unconstitutional.

---

27–28, 100 S.Ct. 895, 899–900, 63 L.Ed.2d 171 (1980) (Supreme Court jurisdiction under § 1252 is not limited to constitutional question decided by the district court, but includes non-constitutional grounds decided by the district court *and* non-constitutional grounds that were presented to the district court even if that court did not reach them); *United States v. Locke*, 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985) (same).

8. Section 1291 provides that

> [t]he courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States ... except where a direct review may be had in the Supreme Court.

28 U.S.C. § 1291.

## A.

█ The starting point of our evaluation of the district court's findings is an analysis of the precise language that the court employed to reach its conclusion. Although the district court's own characterization of its decision is not by itself dispositive of how we must view that decision on review, the district court's language provides an instructive component to our evaluation. *Cf. Hoots v. Pennsylvania,* 639 F.2d 972, 979 (3d Cir.1981) ("literal characterization of an order ... only begins the inquiry into appealability") (quoting *Stateside Mach. Co., Ltd. v. Alperin,* 526 F.2d 480, 482 (3d Cir.1975)); *see also Rodgers v. United States Steel Corp.,* 541 F.2d 365 (3d Cir.1976).

In the statement of its findings of law, the district court focused only upon the regulations and "rules" of the appellants' in its discussion of the constitutional infirmity present in the enforcement of § 602(a)(38). The district court found that Congress intended to include consideration of child support payments in the determination of eligibility for AFDC benefits. Further, it held that the regulations promulgated by the Secretary were consistent with that intent, and enacted it by "specify[ing] that any income or resources of relatives living with the dependent child be counted when determining the amount of AFDC benefits." J.App. at 79–80 (Conclusions of Law ¶¶ 25, 26). The district court agreed with the parents' claim that an unconstitutional taking existed, but found that the taking occurred "[a]s a result of defendant's *rules." Id.* at 80 (Conclusions

of Law ¶ 29) (emphasis supplied). It held that the taking resulted when the independently supported children were forced to assign their support to the DPW without consideration of their need to have the funds expended exclusively on their behalf. The court found that the regulations were infirm for failing to provide a pre-determination hearing. Significant to our analysis, the district court attributed this infirmity to "[t]he *regulations* accompanying this statute [that] require no inquiry into whether the child support income is restricted to the use and benefit of the child for whom this payment is made. Instead, it is presumed that this money is 'available' to the entire family." *Id.* at 81, (Conclusions of Law ¶ 32) (emphasis supplied). The court held that the recipients had a "recognizable property interest in the state-created right to receive non-custodial child support payments," *Id.* at 82, (Conclusions of Law ¶ 35), and therefore also had a right to procedural due process prior to being deprived of them. *Id.* at ¶ 36. It found that this right had been infringed upon, and concluded that "[t]o remedy the due process violation, a pre-deprivation hearing shall be required when *implementing the new rule." Id.* at 85, ¶ 44 (emphasis supplied).

█ Significantly, at no point in its decision did the district court express a view that the statute itself was unconstitutional. To the contrary, in its only explicit evaluation of the statute's constitutionality, pursuant to the Equal Protection Clause, the court expressly concluded that the statute was constitutional.[9] Applying a ration-

9. The parents had argued that the statute, as applied, violated the equal protection clause because it provided for the exemptions of some similarly situated children from the sibling deeming rule without a legitimate rational basis. The statute exempts alien children who are not lawfully and permanently residing in the United States, and alien children who are sponsored by an agency, from the deeming requirement. *See* 42 U.S.C. §§ 602(a)(33) and 615(c)(1). It also exempts children who receive child support from parents who are absent because of military service. *See* 42 U.S.C. § 606(a). The parents appeared to have recognized that these children are not entitled to AFDC benefits, but contended nonetheless that that fact did not neces-

sarily require that they be excluded from the sibling deeming rule. *See* J.App. at 87 (Conclusions of Law ¶¶ 50–53). The district court found the exemptions to be rationally related to the legitimate government objective of allocating resources, and noted that the statute by its own terms, was limited to *"eligible,* dependent children." *Id.* at 88, (Conclusions of Law ¶ 55). We conclude that the district court was correct in this finding. The parents' argument that Congress could not properly exempt children who are ineligible to receive AFDC benefits from the deeming requirement, misperceives rational basis analysis. In order for a statute to withstand scrutiny under this test, the government need only demonstrate that the statute

al basis test, which all parties conceded was the proper standard of analysis, the district court found that the "statute is rationally related to fulfilling ... [the] legitimate government interest [of allocating scarce public resources,] and therefore *satisfies the rational basis test.*" *Id.* at 86, (Conclusions of Law ¶ 48) (emphasis supplied).

The language employed by the district court demonstrates that the circumstances of this case are analogous to those of *Christian Echoes,* in which a district court determined that the implementing regulations promulgated by the IRS were constitutionally infirm. The Supreme Court held that § 1252 did not authorize its review of the district court's decision. The Court noted that

> [t]he District Court's commentary on the denial of due process to the appellee was directed simply to the *method* by which § 501(c)(3) was enforced—not to its basic applicability ... [its] holding restricts freewheeling enforcement and may make it more difficult to revoke certain tax exemptions. But it does not call into question the validity of the underlying statute. Under § 1252, direct appeal to the Supreme Court is authorized only in the latter situation.

404 U.S. at 564, 92 S.Ct. at 665 (emphasis in original).

### B.

■ In our view, the language employed by the district court demonstrates clearly that the court's findings did not constitute a holding that § 602(a)(38) was unconstitutional. As we noted above, however, our review does not end with this conclusion. Jurisdiction under § 1252 exists not only in those circumstances in which a United States court has expressly held an Act of Congress unconstitutional, but extends also to those cases in which a

determination of unconstitutionality is " 'a necessary predicate to the relief' that the lower court granted," *California v. Grace Brethren Church,* 457 U.S. 393, 405, 102 S.Ct. 2498, 2506, 73 L.Ed.2d 93 (1982) (quoting *United States v. Clark,* 445 U.S. 23, 26 n. 2, 100 S.Ct. 895, 899 n. 2, 63 L.Ed.2d 171 (1980)), and where the court's decision has the effect of binding "the United States or its officers ... [to] a holding of unconstitutionality." *Id.* (quoting *McLucas v. DeChamplain,* 421 U.S. at 31, 95 S.Ct. at 1371). In this light, we must examine the relief that the district court ordered to determine whether it has the effect of holding § 602(a)(38) unconstitutional. This task, however, need not long delay us. The order that the district court signed amply demonstrates its intent to construe the statute in favor of constitutionality. We can perceive no construction of the decision that would lead to a contrary result.

In its October 2, 1985 order, the district court mandated that a "pre-deprivation hearing ... be held when *implementing* 42 U.S.C. § 602(a)(38)." J.App. at 89 (emphasis supplied). The order did not invalidate the statute, nor did it absolutely preclude appellants from further enforcement of the act consistent with the Congressional mandate to include child support payments in the calculus of eligibility for AFDC benefits. Rather, the district court's order required only that the implementing regulations of the statute be altered to include a provision for a pre-deprivation hearing in each case. That holding did not "bind the government" to a ruling that an "Act of Congress" was unconstitutional. Demonstrative of that fact is that the district court's decision did not require that *Congress* further amend or alter § 602(a)(38) before that statute could be enforced. The order of the district court, and the accom-

does not arbitrarily discriminate against an identifiable group of persons. In this case, the distinction that Congress has drawn seems well suited to effect a legitimate government interest. Congress has taken the class of dependent children who receive independent income, and whose families receive AFDC benefits, and drawn a reasonable distinction between those children who are themselves AFDC eligible and

those who are not. Whatever this Court may think of the policy behind this statute as a whole, we cannot find on this point that it would be more consistent with the Constitution to require a child who is himself or herself ineligible to receive AFDC benefits, to surrender the independent income that he or she receives in order to make the remainder of his or her siblings eligible for benefits.

panying decision both reflect the district court's view that only the regulations required alteration. In our view, the district court's decision led only to the result that the appellants were bound by a judicial determination that *their* own acts were unconstitutional. The Supreme Court has made it clear that such circumstances are not sufficient to trigger § 1252 jurisdiction. *See, California v. Grace Brethren Church.* For these reasons, we conclude that the issues raised on this appeal are properly resolved by this Court.

### III.

Having rejected the challenge to our jurisdiction, we are left with the substantive issue originally raised on this appeal. The manner by which we must resolve that issue, however, has been predetermined by the Court in *Bowen v. Gilliard,* and we must dispose of this appeal in accordance.

In *Bowen v. Gilliard,* the Supreme Court decided that Congress properly exercised its authority when it required that child support payments for *all* AFDC benefit eligible children be included in the determination of the family's AFDC eligibility. The Court expressly found that the statute's deeming requirement did not constitute a "taking" of the supported child's property because the child "holds no vested protectable expectation that his or her parent will continue to receive identical support payments on the child's behalf, and that the child will enjoy the same rights with respect to them." 107 S.Ct. at 3020. Further, in the Court's view, because the child is AFDC eligible, his or her support payments are not "taken," but rather substituted by the state benefits that he or she will receive. For these reasons, the Court held that the requirement that the parent assign the support payments received on behalf of the child did not violate the child's due process rights, and instead constituted only a modification, in some cases, of the amount of support that the child will receive.

In the present case, the district court's invalidation of the regulations on the ground that they failed to provide for a pre-deprivation hearing is inconsistent with *Bowen v. Gilliard.* The district court's decision rested upon the determination that the supported child maintains a protectable property interest in the child support payments that he or she receives, and to that extent it is contrary to the decision of the Supreme Court, and therefore must be reversed. Also, the injunction that the district court ordered to enforce its decision must be vacated.

### IV.

Finally, the contention raised by the parents on cross-appeal must also be determined to be without merit. Their argument that an unconstitutional taking results from any deprivation of a child's support payments as a condition to AFDC eligibility, even deprivation that occurs subsequent to a due process hearing, was also resolved in *Bowen v. Gilliard.* As we have noted above, the Supreme Court conclusively decided that no property interest existed in the child support payments, and thus that the protections of the takings clause were not triggered. *See* 107 S.Ct. at 3020. For that reason, we will affirm that part of the district court's judgment that upheld the constitutionality of the statute.

### V.

For the foregoing reasons, we will reverse the district court's judgment to the extent that it enjoins the enforcement of the regulation. We will affirm that part of the judgment upholding the constitutionality of the statute.