[No. 23478-1-I.   Division One.   May 14, 1990.]

WILLIAM L. KINDER III, *Appellant,* v. TERENCE MANGAN, *as Chief of Police,* ET AL, *Respondents.*

*William Johnston,* for appellant.

*Bruce L. Disend, City Attorney,* for respondents.

COLEMAN, C.J.—William Kinder appeals a superior court order forfeiting his Porsche automobile. We affirm.

On October 14, 1986, Officer Hutchings arrested Kinder for selling cocaine and seized his Porsche pursuant to the Uniform Controlled Substances Act, RCW 69.50.505(a)(4). Kinder subsequently elected pursuant to RCW 69.50.505(e) to have a forfeiture hearing in superior court.

On August 17, 1988, prior to the forfeiture hearing, the trial court granted Kinder's motion for an order authorizing him to send interrogatories to the Drug Enforcement Administration (DEA) in order to determine the whereabouts of Thomas Kinkosich. Kinkosich was an informant working for the DEA and the City.

Kinder's attempt to locate the whereabouts of Kinkosich through the DEA was unsuccessful. Judge Swedberg of the Whatcom County Superior Court granted the government's motion to quash the subpoena and interrogatories on the ground that Kinder had failed to comply with federal regulations. On October 14, 1988, Kinder asked Judge Swedberg to reconsider his decision. Kinder stated that he did not follow federal procedures to obtain the information because he was suspect of the intentions of the government. Kinder then moved to dismiss. The court sua sponte entered an order directing the City to produce Kinkosich at trial or to show good cause why it was unable to do so.

On October 25, 1988, the forfeiture hearing began. Kinder moved to dismiss on the ground that the City had failed to produce Kinkosich, a material witness. The City explained to the trial court that it did not know his whereabouts and had not known them for over a year. The trial court denied the motion stating that it would proceed with the hearing and then determine if Kinkosich's testimony was crucial. Later in the hearing the court stated that it accepted the City's statement and denied Kinder's motion to dismiss. Officer Hutchings was the City's only witness at the hearing. His testimony can be summarized as follows.

On July 9, 1986, Officer Chambers arranged a drug transaction with Kinder over the telephone. Officer Hutchings was with Chambers at the time of the conversation. He gave Officer Chambers $1,000 from the Whatcom County Drug Fund to purchase the cocaine. He followed Chambers to Win's Drive–In, where the transaction was to take place. Chambers parked in the Win's Drive–In parking lot and waited for Kinder. Hutchings waited in his car a short distance away. He saw Kinder walk out of a nearby restaurant and over to a Porsche in the restaurant parking lot.

Kinder drove the Porsche to the Win's Drive–In parking lot. Once he stopped his car, Chambers got out of his car and got into Kinder's Porsche. Kinder backed up the car to a nearby wall. Hutchings observed the two men converse for a few moments then Chambers got out of the car and went back to his own. Kinder drove his Porsche back to the Fairhaven Restaurant. Hutchings then met with Chambers who handed him two plastic bags filled with cocaine and $100, the money left over after Chambers purchased the cocaine.

The court also heard testimony from Kinder. Kinder admitted selling cocaine to Chambers on July 9, 1986. Kinder testified that he did not use his Porsche to make the transaction—rather he walked from the Fairhaven Restaurant to the Win's Drive–In parking lot where Chambers was waiting. He testified that the sale of cocaine occurred in Chambers' car. Kinder testified that he was delivering

Kinkosich's cocaine to Chambers and that he gave the $900 proceeds to Kinkosich after the sale. The court also heard testimony from two of Kinder's witnesses concerning Kinkosich's illegal drug use and his other illegal activities. At the conclusion of the hearing, the trial court entered an order of forfeiture. This appeal followed.

Appellant contends that the trial court erred (1) by denying his motion to dismiss, (2) by admitting hearsay testimony, and (3) by denying his motion to suppress. We first consider whether the trial court erred by denying appellant's motion to dismiss.

Appellant contends that the trial court violated his rights to compulsory process under the Sixth Amendment and article 1, section 22 of the Washington State Constitution by failing to order the production of Kinkosich. Appellant contends that Kinkosich was a material witness because he could corroborate appellant's testimony that he did not use his Porsche to complete the drug transaction and Kinkosich's testimony would support appellant's entrapment defense.

The right to compel witnesses is guaranteed by the Sixth Amendment, which provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him [and] to have compulsory process for obtaining witnesses in his favor". These rights were recognized and applied to the states in *Washington v. Texas,* 388 U.S. 14, 18 L. Ed. 2d 1019, 87 S. Ct. 1920 (1967). Although the right is jealously guarded, it is not absolute. *State v. Smith,* 101 Wn.2d 36, 41, 677 P.2d 100 (1984). The right to compel witnesses is limited to those witnesses who are material to the defense. *Smith,* at 41.

A trial court's denial of a request for compulsory process will be disturbed only when the accused has been prejudiced thereby, considering factors such as diligence, surprise, materiality, and the maintenance of orderly court procedure. *State v. Derum,* 76 Wn.2d 26, 28, 454 P.2d 424

(1969). "It is not an abuse of discretion to refuse a continuance where the proffered testimony would not be likely to change the result, or would be inadmissible." *Derum,* at 28.

Whether the Sixth Amendment applies in an automobile forfeiture proceeding is a matter of first impression in Washington. We recognize that certain Fourth and Fifth Amendment safeguards have been applied by Washington courts and the federal courts in civil forfeiture actions. *See Deeter v. Smith,* 106 Wn.2d 376, 378, 721 P.2d 519 (1986); *United States v. Henderson,* 844 F.2d 685, 688 (9th Cir. 1988). However, the Supreme Court has refused to broaden the criminal characterization of civil forfeiture proceedings to encompass a wider range of constitutional protections than those protected by the Fourth and Fifth Amendments. *Henderson,* at 688. *See United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 362–63, 79 L. Ed. 2d 361, 104 S. Ct. 1099 (1984) (civil forfeiture not deemed criminal action for double jeopardy purposes); *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 686–87, 40 L. Ed. 2d 452, 94 S. Ct. 2080 (1974) (civil forfeiture scheme not unconstitutional because of its applicability to property interest of innocents).

■ Generally, the right to compulsory process is a right granted to the accused in criminal prosecutions only. The proceeding here, though quasi–criminal in nature because of its punitive aspects, is not a criminal prosecution. *Deeter,* at 378. Therefore, the full panoply of constitutional rights does not attach.

The trial court was entitled to decide the necessity of producing Kinkosich as a witness. Here, the trial court's holding that the City had shown good cause as to why it was unable to produce Kinkosich as a witness is supported by the record. Based on the evidence presented, the trial court concluded:

> 10. On the issue of the City's obligation to produce as a witness, Thomas Kinkosich, at trial. The City has no knowledge of his whereabouts. The last contact with this individual was over

one year ago, and the City did not know where he was living at that time.

11. On October 17, 1988, this Court entered an order directing the City to produce Thomas Kinkosich at trial or show cause why it was unable to do so. In response to said order, the City Attorney contacted the United States Attorney's office in Seattle, Washington, and requested information and assistance in locating Mr. Kinkosich, since Mr. Kinkosich had worked for the Drug Enforcement Agency as an informant. The U.S. Attorney's office informed the City Attorney that they did not know the whereabouts of Thomas Kinkosich, that a request for information would be forwarded to their Washington, D.C. office, but that they did not know whether information was available or whether a response would be received in time for the trial date.

12. Claimant, Gary Biggins, and Ray Martin, all testified that Thomas Kinkosich either used drugs or assisted in criminal transactions of delivery of drugs. Even if present, Mr. Kinkosich would not have been a persuasive witness.

■ The trial court's decision took into consideration those factors set forth in *Derum*. The City was diligent in responding to Judge Swedberg's order to produce Kinkosich. On the other hand, it cannot be said that appellant was diligent in his efforts to locate Kinkosich considering that the forfeiture occurred in October 14, 1986. Moreover, even if Kinkosich had testified, the trial court concluded that his testimony would not likely have changed the result. Thus, the trial court did not err by refusing to dismiss the case.

Appellant next contends that Officer Hutchings' testimony as to his understanding of the price and amount of the planned cocaine purchase should have been excluded as hearsay because it was based upon what Officer Chambers told him took place.

Whether or not the testimony was hearsay and should have been excluded is immaterial. Appellant himself testified that he sold a quantity of cocaine to Chambers for $900 on July 9, 1986, in the parking lot of Win's Drive–In. Therefore, even if the trial court would have excluded Hutchings' testimony as hearsay, the same evidence would have come in at trial through appellant's own testimony.

■ Moreover, the sole issue before the trial court was whether appellant used his Porsche to sell the cocaine to Chambers. The trial court's conclusion was based primarily on its finding that Officer Hutchings' testimony was more credible than appellant's, a determination that is exclusively within the province of the finder of fact. *State v. Michel,* 55 Wn. App. 841, 845, 781 P.2d 496 (1989). Thus, the trial court did not abuse its discretion by not excluding Officer Hutchings' testimony.

We next consider whether the trial court erred by denying appellant's motion to suppress. Appellant contends that the trial court erred by refusing to excise those portions of the search warrant which he claimed were false. Specifically, appellant contends that Officer Hutchings' statement in the application for the search warrant that he had the civil seizure notice form with him was false and that his statement that he had seen appellant use his Porsche in the drug sale was false because he did not actually see the transaction himself.

■ Although an affidavit may be facially sufficient to justify a warrant, a defendant may challenge the affidavit for false statements. *State v. Stephens,* 37 Wn. App. 76, 78, 678 P.2d 832, *review denied,* 101 Wn.2d 1025 (1984). The defendant must show, however, that the affidavit contains intentional or deliberate falsehoods; negligent or innocent mistakes are not enough. *Stephens,* at 78. The remedy for such a misstatement is to excise the offending language and if the remaining information does not show probable cause, the evidence seized must be suppressed. *Stephens,* at 79. "On the other hand, if the affidavit contains sufficient raw facts, without the offending language, the search warrant may still be valid." *Stephens,* at 79.

Here, the trial court did not err by concluding that Officer Hutchings' telephonic testimony in support of the search warrant application was not false. With respect to the civil seizure notice, Hutchings testified in support of the search warrant application that he did have such notice for the Porsche. The fact that he testified at trial that he did

not have the actual form with him at the time he gave the telephonic testimony does not make his testimony in support of the search warrant application false. He explained at trial that he felt that he was being truthful at the time of his telephonic testimony because in fact a seizure notice had been issued and he had verbal authorization from the Chief of Police to seize the Porsche pursuant to the civil seizure forfeiture statute.

With respect to witnessing the cocaine sale, it is true that he did not actually witness appellant hand Chambers the cocaine and Chambers hand appellant the money. He did, however, see everything else. He knew about the transaction prior to the actual sale. He gave Chambers the $900 before the sale and observed the two meet in Win's Drive–In parking lot as planned. He observed the two get into appellant's Porsche and afterward, Chambers gave him the cocaine he purchased and $100 change. Hutchings was not specifically asked whether he saw appellant hand Chambers the cocaine. Rather, he was asked whether he observed the transaction, which he did. It was not a misstatement for him to testify that he had witnessed the sale.

Finally, even assuming that the testimony objected to was excised, the remaining information did establish probable cause. The judicial officer issuing the warrant was informed that Chambers witnessed the actual transaction. Appellant does not question Chambers' reliability or the propriety of the Commissioner's consideration of statements attributable to him. The trial court did not err by refusing to suppress the evidence.

The order of the trial court is affirmed.

SWANSON and GROSSE, JJ., concur.

Reconsideration denied June 25, 1990.

Review denied at 115 Wn.2d 1018 (1990).